IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

The ITC Technology Team, Inc. d/b/a
Alert Public Safety Solutions, *et al.*,

    Plaintiffs,

v.

SOMA PSS, LLC, *et al.*,

    Defendants.

Case No: 2:18-cv-1679

Judge Graham

Magistrate Judge Deavers

Opinion and Order

This breach of contract and trade secrets action is before the court on a motion to transfer venue to the United States District Court for the Middle District of Florida. 28 U.S.C. § 1404(a). Plaintiff ITC Technology Team, Inc., successor in interest to Alert Tracking Systems, Inc., filed suit in Ohio based on forum selection clauses appearing in various contracts that Alert entered into with four of the defendants. Defendants move to transfer venue because Alert and defendant SOMA Global, LLC later entered into an agreement in which they selected Florida as the forum in which they would submit certain disputes.

The court finds that the subject matter of this suit fits within the scope of the agreements having an Ohio forum selection clause and falls outside the scope of the agreement with the Florida forum selection clause. Thus, as is explained in full below, the motion to transfer venue is denied.

I.     Background

    A.     The Ohio Suit

Plaintiff ITC Technology is an Ohio corporation with its principal place of business in Columbus, Ohio. ITC acquired Alert, which also was an Ohio corporation with its principal place of business in Columbus, Ohio. According to the complaint, ITC does business as Alert.

Alert specializes in public safety software. Alert provides software to governmental entities in connection with 911 services, jail management, and police and fire departments records-keeping, among other things.

Three of Alert's employees were defendants Lawrence Stohlman, Ty Grant and Patricia Wells. Stohlman was Alert's Vice President of Sales and Marketing, and he hired Grant and Wells. Grant and Wells entered into Non-Disclosure Agreements (NDAs) with Alert in early 2016. Under these NDAs, Grant and Wells agreed to maintain confidentiality as to any computer programs, prototypes, software, source code, sales data and other information they obtained in the course of their employment. According to the addresses listed on the NDAs, Grant was a resident of North Carolina, and Wells of Florida. The NDAs contained a clause stating that Ohio law would govern and that Ohio courts would have "exclusive jurisdiction" over any disputes arising from the NDAs. See Compl., Exs. D & E.

The complaint alleges that in early 2016, Stohlman introduced Alert to defendant Peter Quintas, a software developer who resided in Florida. At the time, Quintas owned defendant SOMA PSS, LLC, a Florida limited liability company with its principal place of business near Tampa, Florida. Alert and Quintas were contemplating a business relationship whereby Quintas and/or SOMA PSS would assist Alert in developing and selling a cloud-based service called "AEON." The complaint alleges that Alert conceived of the AEON product before meeting Quintas and that Alert anticipated that Quintas could provide the technical expertise needed to develop the product. Neither Quintas nor SOMA PSS were competitors of Alert at the time.

In contemplation of sharing sensitive information with Quintas, Alert required him to sign an NDA on June 16, 2016. The NDA required Quintas to maintain confidentiality as to any computer programs, prototypes, software, source code, sales data and other information he obtained in the course of his business or working relationship with Alert. The NDA contained a clause stating that Ohio law would govern and that Ohio courts would have "exclusive jurisdiction" over any disputes arising from the NDA. See Compl., Ex. C.

On July 5, 2016, Alert and SOMA PSS executed a Letter of Intent agreeing to enter into a "partnership for the purposes of developing and reselling the AEON software product/service." SOMA would "build, maintain, support and host AEON," and Alert would "label and resell AEON." The parties agreed to evenly split net revenue from Alert's resales. SOMA committed to delivering "version 1 of AEON by August 5th." The Letter of Intent was signed by Quintas on SOMA's behalf. The Letter did not contain a forum selection clause. See Compl., Ex. A.

The complaint alleges that SOMA did not deliver AEON to Alert. The complaint asserts that Quintas, Stohlman, Grant and Wells used their access to Alert's trade secrets and confidential

information during this time to misappropriate information for the purpose of establishing a competing business.

On February 2, 2017, Stohlman and Alert executed a Separation Agreement and General Release. The Separation Agreement required Stohlman not to divulge or use to Alert's detriment any proprietary or confidential information or trade secrets acquired in connection with his employment. The Agreement provided that Ohio law would govern and that Ohio courts "shall have jurisdiction" over any disputes arising out of the Agreement. See Compl., Ex. B.

The complaint alleges that on the same day as Stohlman's separation, Quintas and Stohlman founded defendant SOMA Global, a Florida limited liability company with its principal place of business near Tampa, Florida. Quintas is SOMA Global's Chief Executive Officer and Stohlman is its Chief Operating Officer. SOMA employed Grant and Wells at about the same time.

According to the complaint, SOMA began marketing a product called SOMA Hub. This product is allegedly identical to what AEON was supposed to have been – a cloud-based service for use in public safety applications.

ITC filed this suit on December 13, 2018. The complaint asserts several causes of action, including: claims against the individual defendants for breach of their respective agreements not to disclose confidential information; violations of federal and state trade secrets law against all defendants; and breach of contract against Quintas and SOMA PSS for failure to deliver AEON as promised under the Letter of Intent.

On May 9, 2019, ITC voluntarily dismissed its claims against Wells without prejudice.

**B.     The Florida Suit**

Before filing suit, legal counsel for ITC had been communicating with counsel for SOMA in effort to avoid litigation. On December 12, 2018, ITC's counsel sent an email advising that ITC may be filing suit in 24 hours but expressed a desire to resolve the dispute. At about 6:30 p.m., counsel for SOMA responded that it would not be possible to engage in meaningful settlement discussions in less than 24 hours.

Later that evening, SOMA Global filed suit against ITC in the United States District Court for the Middle District of Florida. The complaint is for a declaratory judgment that Alert "has no rights to the AEON software" under the July 5, 2016 Letter of Intent. Compl., ¶ 23, SOMA Global, LLC v. ITC Technology Team, Inc., Case No. 8:18-cv-3006 (M.D. Fla. Dec. 12, 2018). According to the Florida complaint, SOMA Global is the successor in interest to SOMA PSS. SOMA asserts that it did in fact deliver AEON to Alert and that Alert resold the software but breached the agreement by failing

to pay SOMA its share of the revenue. SOMA contends that it retained ownership of AEON under the Letter of Intent.

The complaint states that the basis for venue in Florida is that ITC engaged in business in Florida and breached the Letter of Intent in Florida by failing to make revenue payments to SOMA in Florida.

### C. The 2017 Non-Disclosure Agreement

In support of its motion to transfer venue, SOMA has directed the court's attention to certain facts outside of the pleadings of this action and the Florida action. The court "may consider undisputed facts outside of the pleadings in deciding whether to transfer under § 1404(a)." North v. McNamara, 47 F.Supp.3d 635, 638 n.1 (S.D. Ohio 2014); see also Price v. PBG Hourly Pension Plan, 921 F.Supp.2d 764, 772 (E.D. Mich. 2013) (citing cases). ITC does not dispute the existence of the outside facts, but does question their relevance.

In 2017, Quintas and SOMA Global explored a possible acquisition of Alert. See Quintas Decl. ¶ 18. On November 16, 2017, Quintas signed on SOMA's behalf a "Letter of Intent for the Proposed Acquisition of Certain Assets of Alert Public Safety Systems." Doc. 48-1. The assets identified included the trade name and trademarks of Alert, software licenses, intellectual property, and client and vendor lists. Id. at p. 1. The Letter provided that SOMA and its representatives would have access to certain information for the purpose of performing due diligence. Id. at p. 2. The information to be made available to SOMA included intellectual property and all software source code, as well as all customer information. Id. at Ex. A, §§ 1.4, 2.1.

On November 21, 2017, SOMA and Alert executed a Mutual Non-Disclosure Agreement (the "2017 NDA"). Doc. 35-3. The 2017 NDA stated that it related to "Due Diligence RE: Letter of Intent for the Proposed Acquisition." It imposed mutual obligations on SOMA and Alert to hold proprietary information "in strict confidence." Id. at ¶ 1. It also provided that the "Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof." Id. at ¶ 7. The 2017 NDA contained a provision selecting Florida law to govern and stating that "the parties agree to submit disputes arising out of or in connection with this Agreement to the non-exclusive [jurisdiction] of the courts in the [State of Florida]."[1] Id. at ¶ 8.

---

[1] The forum selection clause contains an error in wording: "to the non-exclusive of the courts." The parties agree that they intended the word "jurisdiction" to appear after "non-exclusive."

4

## II. Motion to Dismiss for Improper Venue

The motion filed by defendants SOMA PSS, SOMA Global and Peter Quintas is two-pronged. In addition to moving to transfer venue, defendants seek dismissal for improper venue under Federal Rule of Civil Procedure 12(b)(3). Defendants argue that the complaint's allegations of venue are insufficient and lack "specificity" as to "dates, times, meetings, or other events." Doc. 35 at PAGEID 194.

The court finds that this prong of defendants' motion is without merit. Defendants cite no support for the proposition that a complaint must plead facts supporting venue with specificity. Cf. Fed. R. Civ. P. 9. Further, venue is proper so long as a case falls within one of the categories listed in 28 U.S.C. § 1391. See Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 56 (2013) (holding that a case which satisfies one of the categories of § 1391(b) "may not be dismissed under § 1406(a) or Rule 12(b)(3)"). Under § 1391, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

The complaint contains sufficient allegations that a substantial part of the events giving rise to the claims occurred in Ohio. Alert, an Ohio business, employed three of the four individual defendants, who were to provide their services to Alert in Ohio. Similarly, Alert retained Quintas and SOMA PSS to provide services and deliver a product to Alert in Ohio. SOMA Global allegedly used Alert's trade secrets to produce a product for itself that SOMA PSS was supposed to have delivered to Alert in Ohio. Finally, defendants have allegedly marketed SOMA Hub to Alert's customers, 80% of whom are located in Ohio. See Gruber Decl. at ¶ 3.

Thus, the court denies defendants' motion to dismiss for improper venue.

## III. Motion to Transfer Venue

Forum selection clauses "may be enforced through a motion to transfer under § 1404(a)." Atlantic Marine, 571 U.S. at 59. Section 1404(a) provides, "For the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). It undisputed that the Middle District of Florida, where SOMA PSS and SOMA Global are based, is a district in which this action might have been brought.

The Supreme Court has instructed that forum selection clauses are to be "given controlling weight in all but the most exceptional cases." Atlantic Marine, 571 U.S. at 60 (internal quotation marks omitted). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Id. at 62 (footnote omitted). In agreeing to a forum selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. at 64.

The court therefore treats "the private-interest factors to weigh entirely in favor of the preselected forum." Id. A "district court may consider arguments about public-interest factors only." Id. Those public-interest factors "will rarely defeat a transfer motion," such that "[o]nly under extraordinary circumstances unrelated to the convenience of the parties" should the court deny a motion under § 1404(a) to transfer venue to the preselected forum. Id. at 62, 64.

Defendants argue that this action should be transferred to the Middle District of Florida because the 2017 NDA contained a Florida forum selection clause. Defendants argue that the clause was broad in scope and the 2017 NDA superseded all prior agreements, including the NDA signed by Quintas in 2016.

ITC responds that the 2017 NDA is inapplicable because the complaint filed in this action does not relate to the proposed acquisition that was the subject of the 2017 NDA. ITC contends that its claims instead arise out of defendants' conduct regarding the AEON project and thus the Ohio forum selection clauses found in the earlier NDAs and the Separation Agreement control.

Atlantic Marine emphasized that courts must respect parties' bargained-for expectations. See 571 U.S. at 66 ("[C]ourts should not unnecessarily disrupt the parties' settled expectations."). The court finds that the parties did not bargain for the 2017 NDA to cover the current dispute. The 2017 NDA constituted "the entire understanding between the Parties relating to the *subject matter* hereof." 2017 NDA at ¶ 7 (emphasis added). The 2017 NDA expressly related to the subject matter of SOMA's proposed acquisition of Alert. The 2017 NDA began with a recital that each party "acknowledges that the other party . . . has disclosed or may disclose information relating to Due Diligence RE: Letter of Intent for the Proposed Acquisition." Id. at Recitals. In turn, the Letter of Intent for the Proposed

6

Acquisition set forth "proposed terms and conditions under which SOMA Global . . . would acquire certain assets" belonging to Alert. Nov. 16, 2017 Letter of Intent at p. 1. One such condition was Alert allowing SOMA to conduct due diligence pertaining to Alert's "assets, liabilities, contracts, operations and business." Id. at p. 2.

This lawsuit does not arise from or relate to SOMA's proposed acquisition of Alert or SOMA's due diligence examination of Alert. Rather, the complaint squarely concerns the AEON project and defendants' alleged misuse of confidential information they obtained from Alert during the AEON project. Alert required Quintas to sign an NDA in preparation for retaining him and his firm, SOMA PSS, to work on the AEON project. Alert also required its own employees, Stohlman, Grant and Wells, to sign NDAs. The four individual defendants each agreed not to disclose confidential information and trade secrets obtained during the course of employment or during the parties' "working relationship" or "business relationship." Each of these agreements selected Ohio as the exclusive forum to bring suit regarding "any dispute arising from or in connection with this Agreement." Under Atlantic Marine, this court must enforce the agreements made between Alert and the individual defendants to resolve their disputes in Ohio.[2]

SOMA emphasizes that neither SOMA PSS nor SOMA Global were parties to the agreements which contained Ohio forum selection clauses. ITC has sued SOMA PSS for failing to deliver the AEON product in breach of the June 30, 2016 Letter of Intent, which did not have a forum selection clause. ITC has sued SOMA PSS and SOMA Global for using Alert's trade secrets to create the SOMA Hub project in violation of federal and state trade secrets law.

The court finds that the lack of a forum selection agreement between Alert and the SOMA entities does not support a conclusion that the claims against them should be transferred to a different forum. The complaint alleges that Quintas owned and acted on behalf of SOMA PSS and that he and Stohlman founded and controlled SOMA Global. Quintas signed the June 30, 2016 Letter of Intent on behalf of SOMA PSS. In his declaration, submitted with the motion to transfer venue, Quintas states that he is "the sole member of SOMA PSS" and that he is the one who has "operated" SOMA

---

[2] The individual defendants submitted a brief arguing that Stohlman's Separation Agreement is not enforceable because it lacked consideration provided by Alert to Stohlman. However, the Separation Agreement contains, at a minimum, a promise by Alert to "maintain in confidence and not to disclose the terms of this Agreement . . . [and] any facts surrounding Employee's employment and separation from employment." Separation Agr. at § 6.2

7

PSS. Quintas Decl. ¶¶ 1,9. He further states, "I was the common factor of all legal entities for which Alert had shared [its alleged trade secrets], and I was an owner of all entities involved." Id. at ¶ 20.

The conduct for which the SOMA entities are being sued was allegedly committed by Quintas and by the former employees of Alert who joined SOMA Global. SOMA PSS allegedly breached the Letter of Intent and the SOMA entities allegedly violated trade secrets law as part of the execution of a plan by Quintas and the other individual defendants to misappropriate the confidential information they obtained from Alert for the SOMA entities' benefit. In other words, the individual defendants, with whom Alert did have forum selection agreements, are the ones who allegedly caused the SOMA entities to engage in actionable conduct which was directly related to the individual defendants' alleged breaches of their NDAs. The court thus finds that even though the SOMA entities did not enter into Ohio forum selection agreements with Alert, the claims against them a properly a part of this suit in Ohio.[3]

That SOMA Global filed suit first in Florida does not lead to a different conclusion. According to the complaint filed in this case, Quintas and Stohlman founded SOMA Global and then launched the SOMA Hub product based on trade secrets they obtained from Alert during the AEON project. Where the alleged actions of Quintas and Stohlman are claimed to have breached agreements containing Ohio forum selection clauses, the fact that Quintas and Stohlman's company, SOMA Global, won a race to the courthouse to have the conduct of defendants declared lawful is assigned no significance.

The court's conclusion draws support from two legal principles. First, the presence of a forum selection clause "justif[ies] departure from the first-to-file rule." Valpak of Cincinnati, Inc. v. Valpak Direct Mktg. Sys., Inc., No. 1:05-cv-510, 2005 WL 3244321, at *3 (S.D. Ohio Nov. 30, 2005). See also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 552 (6th Cir.

---

[3] The court further finds that, even if the 2017 NDA has some arguable applicability to the claims against SOMA Global, the Florida selection clause was permissive, not mandatory. The parties agreed to submit disputes arising under 2017 NDA to the "non-exclusive [jurisdiction] of the courts" of Florida. Such a forum selection clause does not prohibit this litigation in Ohio. See Scepter, Inc. v. Nolan Transportation Grp., LLC, 352 F.Supp.3d 825, 830–31 (M.D. Tenn. 2018) (finding that "a mandatory forum selection clause grants exclusive jurisdiction to a selected forum, while a permissive forum selection clause only reflects the contracting parties' consent to resolve disputes in a certain forum, but does not require that disputes be resolved in that forum") (internal quotation marks and alterations omitted); Kendle v. Whig Enterprises, LLC, No. 2:15-cv-1295, 2016 WL 354876, at *5 (S.D. Ohio Jan. 29, 2016) (finding that the effect of a permissive forum selection clause was not that it required transfer to the selected forum, but only that it prevented the plaintiff from arguing that the selected forum was an improper venue).

2007); Samuels v. Medytox Sols., Inc., No. CIV.A. 13-7212 SDW, 2014 WL 4441943, at *10 (D.N.J. Sept. 8, 2014) (finding that the "presence of a single forum selection clause will almost always render the first-to-file rule inapplicable."). Second, "[a] plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing." Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc., 16 Fed. App'x 433, 437 (6th Cir. 2001). This second principle has particular force here in light of the evidence that SOMA filed the Florida suit late on the evening before the day it believed ITC would file this suit. Doc. 45-4.

## IV. Conclusion

Accordingly, defendants' motion to dismiss for improper venue and motion to transfer venue (doc. 35) is DENIED.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: May 22, 2019